OPINION OF THE COURT
Jasen, J.
We are called upon to decide whether and to what extent each of two insurers is liable for a single risk. At issue is the potential responsibility of these insurers to make disability payments to certain employees of Control Data Corporation who originally became disabled while a policy of group disability insurance issued by plaintiff Continental Casualty Company was in force and who suffered a “recurrence” after the termination of plaintiff’s policy and during the term of a successor disability policy *231 issued by defendant Equitable Life Assurance Society of the United States. The sole question before us is whether either or both of the insurance contracts in issue obligate the respective insurers to make payments for such “recurring” disabilities.
Continental Casualty Company (“Continental”), plaintiff in this declaratory judgment action, issued a group disability policy covering the employees of Control Data Corporation. The policy was effective July 1, 1975 and expired on June 30, 1976. Control Data Corporation replaced the expiring Continental policy with a policy issued by defendant Equitable Life Assurance Society of the United States (“Equitable”) which became effective on July 1, 1976. After this changeover occurred, a dispute arose between Continental and Equitable as to which insurer is responsible to pay the disability claims of employees who became disabled during the term of Continental’s policy, but who suffered a recurrence within six months of this prior disability after returning to work and after Equitable’s policy became effective. The substance of the dispute is, of course, that each of these litigants has, after a close examination of both of the insurance contracts in issue, come to the considered conclusion that only the other should pay.
Equitable premises its argument that only Continental should pay upon the following language in Continental’s policy which states:
“If a disability recurs as a result of the same or related cause or causes, it shall be deemed a continuation of the prior period of disability unless an intervening period of six months has elapsed in which event the subsequent period shall be deemed the result of a new sickness * * *
“Termination of the policy of an Insured Employee’s coverage for any reason shall be without prejudice to any claim originating prior to the date of termination.”
Equitable argues that this “recurrent disability” clause imposes the obligation of payment upon Continental because, as defendant reads the contract, such a “recurrent disability” is part of the initial period of disability for which Continental was concededly responsible and, there *232 fore, all such claims must be paid by Continental as if there were no intervening period.
Continental, on the other hand, bases its assertion that Equitable should pay upon the following language in defendant’s policy, which states:
“B. Subject to the Exceptions stated in paragraph *C’ below:
“Each permanent full-time employee shall be eligible for insurance as of the later of July 1,1976 and the date of his commencement of continuous service with the Employer.
“C. Exceptions:
“1. Any employee who is not actively at work at the date he would otherwise become eligible for insurance hereunder shall not be eligible until he returns to active work.”
Continental notes that employees who had suffered a previous disability are not excluded from coverage and that absent such a specific exclusion, payments to such employees are the responsibility of Equitable.
Special Term, after examining the language of both policies, found that only Continental was responsible for payment and granted summary judgment to Equitable. The court noted that if there had been no successor policy Continental would have been responsible for all claims for disabilities which recurred within the six-month contractual period and concluded that if Continental were permitted to escape this liability, it would be given a “windfall”. Accordingly, the court declared that “plaintiff is required to pay all claims for disability benefits made after July 1,1976, by employees of Control Data Corporation previously covered by plaintiff’s policy who suffer a recurrent disability as a result of the same or related cause or causes as a prior disability which commenced before July 1, 1976, where the intervening period is less than six months.” The Appellate Division unanimously affirmed the judgment of Special Term, without opinion.
At the outset, we note our agreement with the courts below that Continental has, indeed, contractually obligated itself to make payments for “recurrent disabilities” and *233 that to relieve it of such liability would result in a “windfall”. The courts below properly recognized that Continental would be liable if there were no successor insurance company. In addition, it would also seem evident that Equitable would have been liable had there been no predecessor insurance company.
The original Equitable policy issued on July 1, 1976 had no exclusion or limitation for disabilities based upon preexisting conditions. The only requirements were that the disability occur after the date the policy took effect and after the commencement of continuous service with the employer. It is significant that a later amended Equitable policy, issued January 1, 1977, expressly limited coverage to deny benefits for certain pre-existing conditions. However, even this limitation in the later policy by its terms was inapplicable to those employees who had been previously insured under Continental’s predecessor policy. Hence, it can be as easily said that if Equitable is relieved of its obligation to pay claims for recurrent disability, a “windfall” will result.
In our opinion, each of these two companies have contracted to insure against the same risk. Either or both of these insurers could fairly be made to pay all of the disability claims in issue. Having contracted to assume this liability, neither company should be heard to complain that the other is the more appropriate obligor. Thus, the result reached by the court below, imposing liability solely upon Continental, appears to us to be unsound, for it fails to take into account at all Equitable’s liability on the instant claims.
Although there is no case law directly in point insofar as disability insurance is concerned, we have, in cases involving liability insurance, held that where one or more insurers have assumed the same risk, each must contribute to the payment of the claim. (Cf. Federal Ins. Co. v Atlantic Nat. Ins. Co., 25 NY2d 71, 78.) In cases involving disability insurance, the extent of the contribution may be more difficult to determine. However, we believe a reading of the “private law” as set forth in the contracts of the parties herein supplies an appropriate measure of the contribution which should be required of each.
*234 Both of the contracts in issue have clauses providing that the benefits payable under the contract are to be reduced by the amount of benefits payable under any other employer disability plan. Thus, each purports to pay only the “excess” over what the other has paid. Although we recognize that the analogy is imperfect, we believe that such “benefit reduction” clauses should be treated as canceling each other out in much the same way as the contracts of two liability insurers, each purporting to provide only “excess” insurance, are read together as providing for shared liability. (Cf. Lumbermen's Mut. Cas. Co. v Allstate Ins. Co., 51 NY2d 651, 655.) Thus, each insurer should share in-the payment of claims for “recurrent disability”. However, since the benefit provisions of the two contracts are not the same, the shares should not be precisely equal.
First, the Equitable policy provides for the existence of a “qualifying period” in which benefits are not payable. This period is 30 days in the Equitable policy effective from July 1, 1976 to January 1, 1977, and five months in the policy taking effect thereafter. This contractual limitation on Equitable’s liability must be respected. Hence, Continental must continue to be solely responsible for payment during the pendency of this “qualifying period”.
Second, the benefits payable to a given employee are not always the same under both contracts due to express limitations on the amount of benefits contained in the two contracts. Since the amounts payable would not be equal, the contributions of the two insurers should be apportioned accordingly. The contribution of each should be calculated in proportion to the amount of liability it contractually assumed.
This can be accomplished by first determining the amount which would be payable under each of the two contracts. Since either company would have been liable up to its own contractual limit but for the fortuitous existence of the other’s contract, the disabled employee should be entitled to receive the higher of the benefits payable under either of the two contracts. The employee receives only a single benefit, but it should be the highest benefit available under either of the policies in force. The contribution of each of *235 the two insurers involved to the amount payable to any employee should then be determined by excluding as to each insurer benefits for the period in question of a type or in an amount not afforded by the other and then requiring that the common liability of both under their respective policies be shared in such proportion as the common coverage liability of each bears to the total common coverage liability of both. In this way, neither insurer will escape liability and receive a “windfall”, and neither will be saddled with the sole responsibility for claims which the other insurer is also contractually obligated to pay.
Accordingly, the order of the Appellate Division should be modified, to the extent of declaring that each of the parties herein should pay its share for the recurring disability benefits in issue as indicated above and the case should be remitted to Supreme Court, New York County, for a determination of the liability of each of the parties for the payment of individual claims for recurrent disability.
Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order modified, without costs, and case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.